IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PROG HOLDINGS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MAJDI HAROUN, an individual,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No.: 2:21-cv-00456-TC-JCB<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

Before the court is Plaintiff and Counterclaim Defendant Prog Holdings, Inc.'s (Progressive) Motion for Summary Judgment on Defendant and Counterclaimant Majdi Haroun's counterclaims. ECF No. 31 (Mot. Summ. J.). For the reasons discussed below, the court grants Progressive's motion for summary judgment on both counterclaims.

## BACKGROUND

Progressive brings six claims against its former employee, Mr. Haroun: breach of contract; violation of the Federal Defend Trade Secrets Act; violation of the Computer Fraud and Abuse Act; violation of the Utah Uniform Trade Secrets Act; violation of the New Jersey Trade Secrets Act; and trespass to chattels/conversion. Am. Compl., ECF No. 13.

Mr. Haroun disputes Progressive's allegations and counterclaims against Progressive. Answer Am. Compl. & Countercl., ECF No. 15. His first counterclaim is for breach of contract. He alleges the agreement Progressive gave him when it fired him was a binding agreement that Progressive breached by not paying Mr. Haroun $430,200.22 he is owed under that agreement. See id. ¶¶ 10–14 (of Countercls.). His second counterclaim is for breach of the implied covenant of good faith and fair dealing. He alleges Progressive breached this covenant by indicating it would not, and failing to, make payouts Mr. Haroun says the agreement requires. Id. ¶¶ 15–18.

Progressive now asks for summary judgment on Mr. Haroun's two counterclaims. It argues the agreement on which Mr. Haroun's claims are based is not enforceable, and Mr. Haroun's claims consequently fail as a matter of law. See Mot. Summ. J. 5–8, ECF No. 31.

**UNDISPUTED MATERIAL FACTS**

Mr. Haroun used to be employed by Progressive.[1] See Mot. Summ. J. Ex. 1, Deposition of Majdi Haroun 109:05–17, ECF No. 31-1 ("Haroun Dep."); Resp. SUMF ¶ 1 (not disputing employment). On June 29, 2021, in a call with Ben Hawksworth (Chief Product and Technology Officer) and Debra Fiori (Chief People Officer), Progressive informed Mr. Haroun his employment would be terminated, effective July 2, 2021. Haroun Dep. 160:03–161:08; Resp. SUMF ¶ 2 (not disputing firing or date of firing). During the call, Progressive emailed Mr. Haroun an agreement; the name and characterization of the agreement are disputed, but it is undisputed that Progressive sent Mr. Haroun an agreement during the call, and that, among other things, the agreement laid out his severance benefits. Mot. Summ. J. Ex. 2 at 2, Email from Fiori to Haroun, ECF No. 31-2; Haroun Dep. 160:09–21; Resp. SUMF ¶ 3 (disputing characterization of the agreement as the "Proposed Agreement," but not that the agreement was sent at that time). Section 9 of that agreement, which the court calls the PEA,[2] provides:

---

[1] In his "Response to Plaintiff's Statement of Undisputed Material Facts" ("Resp. SUMF") Mr. Haroun responds to the facts Progressive lists as undisputed. Opp. Mot. Summ. J. 2–8, ECF No. 32 (referencing Progressive's Statement of Material Facts ("SUMF"), Mot. Summ. J. 3–5, ECF No. 31). Where Mr. Haroun disputes only part of a fact, his response is cited to clarify which parts of the fact he disputes. See, e.g., Resp. SUMF ¶ 2 (disputing characterization of why Mr. Haroun was fired, but not disputing that the phone call occurred or the date of the call).

[2] Progressive calls it the "Proposed Agreement." See Mot. Summ. J. 5. Mr. Haroun calls it the "Post-Employment Agreement." See Answer Am. Compl. & Countercls. ¶ 7. This is not a genuine dispute of material fact that precludes summary judgment because it is not essential to resolve the name of the agreement to dispose of the claims at hand. See Wright ex rel. Tr. Co. of Kansas v. Abbott Lab'ys, Inc., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (stating fact is material if under the substantive law it is essential to claims' proper disposition). The court uses "PEA" because the document bears the title "Post-Employment Agreement." See ECF No. 31-3.

> **VOLUNTARY AGREEMENT/"EFFECTIVE DATE" DEFINED**. Haroun may take up to twenty-one (21) days to review and consider the terms of this Agreement, although Haroun is free to sign this Agreement prior to the expiration of said twenty-one (21) day period if he so chooses. *Haroun is advised by the Company that he should review and discuss this Agreement with an attorney before signing. Haroun represents that he understands the terms and effect of this Agreement, and that he voluntarily enters into this Agreement without duress or coercion.* The "Effective Date" of this Agreement shall be on the eighth (8th) day following its execution by Haroun and the Company's authorized representative. Both Haroun and the Company have the right to revoke this Agreement at any time prior to its Effective Date by providing written notice to the other. Following the Effective Date of this Agreement, neither the Company nor Haroun shall have the right to revoke any portion of the Agreement except as mutually agreed in writing and signed by both Parties.

Mot. Summ. J. Ex. 3, Post-Employment Agreement ("PEA"), ECF No. 31-3; Resp. SUMF ¶ 4 (disputing characterization of agreement, stating agreement "speaks for itself.").

Mr. Haroun was informed that on June 30, 2021, at about 1:07 PM, Progressive received a "red flag" notification. The notification was that approximately 12.5 GB of Progressive data had been downloaded from Mr. Haroun's company-issued computer onto an external "Seagate" hard drive. Progressive requested Mr. Haroun return all his equipment, data, files and information to Progressive to allow Progressive to audit his devices to ensure that he had not downloaded/taken any Progressive data. Haroun Dep. 163:07–16, 166:20–167:17, 169:07–12, 169:23–171:07; Mot. Summ. J. Ex. 4, Deposition of Jami Hughes 39:17–56:10, ECF No. 31-4; Resp. SUMF ¶ 5 (disputing that Mr. Haroun downloaded Progressive's data to an external hard drive, but not disputing that he was informed of the "red flag" notification).

On June 30, 2021, Mr. Haroun signed the PEA before his return of company equipment and information. PEA 4; Resp. SUMF ¶ 6 (disputing characterization of PEA). On or about July 7, 2021, Progressive's HR Specialist, Ms. Fiori, sent Mr. Haroun a text telling him that she had received his signed copy of the PEA but Progressive would not sign the PEA until the audit of Mr. Haroun's equipment was completed. Mot. Summ. J. Ex. 5, Texts Between Fiori and Haroun

PROG0000738 & HAR0000381, ECF No. 31-4; Haroun Dep. 179:11–25; Resp. SUMF ¶ 7 (disputing characterization of PEA).

Progressive never signed the PEA. See Mot. Summ. J. Ex. 6, Declaration of Debra Fiori ¶ 13, ECF No. 31-6; PEA 4; Resp. SUMF ¶ 9 (disputing Mr. Haroun knew Progressive had not signed and Progressive's characterization of the PEA, but not that Progressive has never signed).

## DISCUSSION

Progressive argues it is entitled to summary judgment because it did not sign the PEA, so the PEA is unenforceable. Mr. Haroun contends that the PEA need not be signed to be enforceable, or, at least, an ambiguity or dispute exists about enforceability, which precludes summary judgment. He also requests permission to amend his counterclaims if the PEA is found unenforceable. The court finds the PEA's language is unambiguous and unenforceable, and there is no dispute or ambiguity that precludes summary judgment. It does not grant Mr. Haroun's request to amend.

### I. Summary Judgment Standard.

"Summary judgment is appropriate if 'there is no genuine issue as to any material fact' and the moving party is entitled to a judgment as a matter of law." Utah Animal Rts. Coal. v. Salt Lake Cnty., 566 F.3d 1236, 1242 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "When applying this standard, [courts] view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id. (quoting Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1104 (10th Cir. 2008)).

4

## II. The PEA is Not Enforceable Without Progressive's Signature.

The court finds there is no material dispute of fact about the PEA's enforceability. The PEA's language is unambiguous on the issue of whether it is enforceable without Progressive's signature. It is not enforceable. Progressive is, as a result, entitled to summary judgment.

a. Governing Law.

Progressive argues that Utah law applies to this dispute. It says this is so because the PEA's governing law provision—which says New Jersey law governs the PEA—does not apply because the PEA "is not enforceable or binding. Accordingly, because Utah is the forum state, Utah law applies." Mot. Summ. J. 6 n.1 (citing PEA ¶ 14). Mr. Haroun neither responds to this argument nor argues that New Jersey law, instead of Utah law, applies. Without explaining why, he relies on New Jersey and Utah law, and Third and Tenth Circuit law. See Opp. Mot. Summ. J. 9–10.

Where a party does not respond to an issue raised by its opponent, the court is not required to do his work for him and dissect the opposing party's plausible argument. See Cayetano-Castillo v. Lynch, 630 F. App'x 788, 794 (10th Cir. 2015); cf. Barrios v. Albuquerque Bernalillo Cnty. Water Util. Auth., No. CV 17-56, 2018 WL 2107789, at *7–8 (D.N.M. May 7, 2018) (assuming without deciding that where a party failed to respond to opponent's argument, the non-responding party conceded the issue). Mr. Haroun failed to address Progressive's plausible argument that Utah law applies to this dispute, and by applying it himself he reinforced the argument that Utah law does apply. As both parties apply Utah law, and Progressive made an unrebutted, plausible argument Utah law applies, the court proceeds under the same assumption and applies Utah law to this dispute. See Grynberg v. Total S.A., 538 F.3d 1336, 1346 (10th Cir. 2008) (applying Colorado law where parties assumed it applied); Digital Ally,

5

Inc. v. Z3 Tech., LLC, 754 F.3d 802, 812 (10th Cir. 2014) ("The parties assume that Nevada law applies . . . and we will accordingly proceed under the same assumption.").

      b. <u>Rules of Contract Interpretation.</u>

Courts interpreting a contract under Utah law first look at the contract's plain language to determine the parties' meaning and intent. Brady v. Park, 2019 UT 16, ¶ 53, 445 P.3d 395, 407 (quoting Meadow Valley Contractors, Inc. v. State Dep't of Transp., 2011 UT 35, ¶ 64, 266 P.3d 671, abrogated on other grounds by Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon, 2018 UT 23, 422 P.3d 809). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." Id. (quoting Cent. Fla. Invs., Inc. v. Parkwest Assocs., 2002 UT 3, ¶ 12, 40 P.3d 599).

> But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder. So where parties to a contract dispute propose competing interpretations of a contractual term or provision, we must determine whether the contract as a whole unambiguously supports one interpretation over the other.

Id. (citing Plateau Mining Co. v. Utah Div. of State Lands & Forestry, 802 P.2d 720, 725 (Utah 1990); Faulkner v. Farnsworth, 665 P.2d 1292, 1293 (Utah 1983)). Utah caselaw lays out the following standard to determine when a contract's term is ambiguous enough to open the door to extrinsic evidence: "a contractual term or provision is ambiguous if it is capable of more than one <u>reasonable</u> interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." Id. ¶ 54 (cleaned up). If a term or provision is ambiguous, "the ambiguity must be resolved by considering extrinsic evidence of the parties' intent." Id. ¶ 53 (citing Mind

& Motion Utah Invs., LLC v. Celtic Bank Corp., 2016 UT 6, ¶ 24, 367 P.3d 994). Following Utah law,[3] the court looks to the PEA and, if the PEA is ambiguous, to extrinsic evidence.

      c. The Language of the PEA.

In interpreting a contract, "[e]ach contract provision is to be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." Utah Valley Bank v. Tanner, 636 P.2d 1060, 1061–62 (Utah 1981).[4] "[W]hen interpreting a contract, [Utah courts] generally give each term its plain and ordinary meaning." Mind & Motion Utah Invs., LLC, 2016 UT 6, ¶ 27, 367 P.3d 994, 1001 (citing Glenn v. Reese, 2009 UT 80, ¶ 10, 225 P.3d 185) (using Black's Law Dictionary to determine plain meaning).

Section 9 of the PEA says, in part, "The 'Effective Date' of this Agreement shall be on the eighth (8th) day following its execution by Haroun and the Company's authorized representative." PEA 2, ECF No. 31-3. The "and" indicates both signatures are required; since Progressive never signed the PEA, the PEA never became effective. Mr. Haroun argues against this conclusion by pointing towards another sentence from Section 9. It reads: "Both Haroun and the Company have the right to revoke this Agreement at any time prior to its Effective Date by providing written notice to the other." Id. at 2–3. Mr. Haroun argues that "the fact that either party had the right to 'revoke [the] Agreement at any time prior to its Effective Date' necessarily means that the [PEA] was operative prior to the Effective Date." Opp. Mot. Summ. J. 10, ECF

---

[3] The court applies Utah law to this dispute, but notes New Jersey courts also begin their process of contract interpretation by looking to the contract and venture outside when they encounter ambiguity. See Barila v. Bd. of Educ. of Cliffside Park, 230 A.3d 243, 255 (N.J. 2020).
[4] New Jersey courts also avoid surplusage in contract interpretation. See Sud v. Ness USA, Inc., No. CV2112330, 2022 WL 1963711, at *5 (D.N.J. June 6, 2022) (quoting Glenpointe Assocs., III v. Regency Sav. Bank, No. 06-1690, 2006 WL 2786885, at *6 (D.N.J. Sept. 25, 2006) (observing, in applying New Jersey law, that "[i]n making a determination concerning the clarity or ambiguity of the contract terms, the Court should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous.").

No. 32. He contends that this sentence means the PEA is operative, or that there is an ambiguity about whether Progressive must have signed it before it becomes operative.

But Mr. Haroun's reading either renders the "Effective Date" language of the PEA meaningless or requires an interpretation of "Effective Date" that conflicts with the term's plain meaning. His construction of Section 9 interprets the contract to be effective before the "Effective Date" provision says it was effective. This renders the "Effective Date" term meaningless surplusage, and violates the principle that a court should not interpret a contract in a way that renders a provision superfluous. See Tanner, 636 P.2d at 1061–62. Any reading of the Effective Date provision that does not read that clause to be superfluous confronts a plain meaning problem. "Effective Date" means "The date on which a statute, contract, insurance policy, or other such instrument becomes enforceable or otherwise takes effect. This date sometimes differs from the date on which the instrument was enacted or signed." Date, Black's Law Dictionary (11th ed. 2019). Helpful to Mr. Haroun is that this definition does not require a signature date and an effective date to be the same. But any interpretation of "Effective Date" that means the contract became enforceable at a time other than on the eighth day following its execution by Mr. Haroun and the Progressive's authorized representative, as the "Effective Date" provision of the PEA reads, violates the principle that a court should give each term its plain and ordinary meaning. Mind & Motion Utah Invs., LLC., 2016 UT 6, ¶ 27, 367 P.3d 994, 1001.

The court finds that the Effective Date language of the PEA is unambiguous. As a result, the court interprets the contract as a matter of law and discerns the parties' intentions from the plain meaning of the contractual language. See Brady, 2019 UT 16, ¶ 54, 445 P.3d 395, 407–08. Doing so, it finds Progressive is entitled to summary judgment. There is no reasonable interpretation of the Effective Date term other than the one that interprets it, and the contract

more broadly, to require both parties' signature to make the PEA enforceable. See id. Further, there is no ambiguity about whether the revocation language in Section 9 means the PEA was operative before the Effective Date: it was not, and it is not reasonable to read it to say otherwise.

    d.   The Impact of Extrinsic Evidence.

Because the PEA is unambiguous, the court interprets it as a matter of law without examining extrinsic evidence of the parties' intent. Nevertheless, the court briefly addresses the extrinsic evidence referred to by Mr. Haroun to note that even when this evidence is considered, the court arrives at the same conclusion: the PEA is not enforceable, there is no ambiguity or material dispute as to that fact, and Progressive is entitled to summary judgment.

    i.   The Termination Memorandum.

Progressive presented the PEA to Mr. Haroun with a written Termination Memorandum. Opp. Mot. Summ. J. 9, ECF No. 32 (citing Mot. Summ. J. Ex. 2 at 3, ECF No. 31-2 (the Termination Memo)).[5] The Termination Memo reads, in part:

> In recognition of your role at Progressive and to support your transition, a Post Employment Agreement is available for you including severance benefits. In order to receive severance benefits, you must sign the Post-Employment Agreement including a waiver and release via Docusign. You may take until July 28, 2021 to sign and submit the agreement. If you do not sign and submit the agreement by the deadline, or if you breach or revoke the agreement, you are no longer eligible for severance benefits and you may be required to repay any benefits that have already been paid to you.

Mot. Summ. J. Ex. 2 at 3. Because the Termination Memo is silent about whether Progressive also needed to execute the PEA for Mr. Haroun to receive benefits, and because Progressive drafted the PEA (so any ambiguity should be construed against it), Mr. Haroun argues that at a minimum—and especially in combination with the PEA's revocation language, quoted above—

---

[5] Mr. Haroun's argument clarifies the Termination Memo is separate document presented with the PEA. Id.; see id. at 11 (asserting Termination Memo "accompan[ied] the Post-Employment Agreement."). The Termination Memo is, accordingly, extrinsic evidence not part of the PEA.

there is an ambiguity about whether Progressive needed to sign the PEA for it to be executed. He argues this ambiguity precludes summary judgment. Opp. Mot. Summ. J. 10, ECF No. 32.

The court has already held, by looking at the PEA itself, it is not reasonable to interpret Section 9 as requiring only one party's signature for the contract to be operative; both are needed. Assuming, for the sake of argument, that the Termination Memo is admissible, its introduction does not create a dispute of material fact or ambiguity about the PEA's operability. The Termination Memo neither says nor implies that the only thing that needed to happen for Mr. Haroun to receive severance benefits was for him to sign and return the PEA. It merely states what Mr. Haroun, the recipient of the Memo, had to do in relation to the document that accompanied the Termination Memo (the PEA), and what actions on his part could cause him to lose eligibility for the PEA's benefits. The PEA further clarifies that others also need act to execute the PEA and make it effective, but the Termination Memo does not introduce an ambiguity or a dispute as to a material fact about the PEA's enforceability that precludes summary judgment.

                                        ii.   <u>Did Progressive Lead Mr. Haroun to Believe It Accepted the PEA.</u>

Mr. Haroun argues the PEA is enforceable because Progressive led him to believe it had accepted the PEA, and that while Progressive disputes this fact, Mr. Haroun claims the dispute precludes summary judgement. Opp. Mot. Summ. J. 11, ECF No. 32. Mr. Haroun lists the following as ways Progressive allegedly led him to believe it had accepted the PEA: First, Progressive's CTO[6] stated in the Termination Memo that Mr. Haroun had to sign the PEA to receive severance but said nothing about Progressive also needing to sign. Second, the PEA requires written notice for either party to revoke, which Mr. Haroun argues Progressive never

---

[6] This appears to be a reference to Mr. Hawksworth. <u>See</u> Termination Memo, ECF No. 31-2.

provided. Third, Mr. Haroun was never aware of the fact that Progressive had not signed the PEA, and "[a]s [he] never received back fully executed copies of any of the other agreements he signed and delivered to [Progressive,] he assumed that [Progressive] signed the [PEA] after not hearing anything further from [Progressive] regarding the audit." Opp. Mot. Summ. J. 12. Mr. Haroun argues that these points show there is at least a summary-judgment preclusive question as to whether Progressive led him to believe it signed the PEA. Id. Progressive denies it ever led Mr. Haroun to believe it accepted the PEA. Reply Supp. Mot. Summ. J. 16–17, ECF No. 38.

      Even if this extrinsic evidence offered by Mr. Haroun were admissible, the court again finds the offered extrinsic evidence does not create an ambiguity or dispute of material fact that would preclude summary judgment. Mr. Haroun's first two points reiterate, but do not strengthen, his existing arguments about the Termination Memo. They do not introduce a material dispute of fact that precludes summary judgment. Mr. Haroun is correct that there is a dispute of fact about whether he received oral notice of revocation. See Haroun Dep., 179:20–180:10, ECF No. 32-1 (showing Mr. Haroun was possibly not informed of Progressive's refusal to sign the PEA). But this is not a dispute of a material fact because whether Mr. Haroun was orally notified is not essential to the claims' disposition. See Wright, 259 F.3d at 1231–32 (defining materiality). Whether or not he was not notified, there is still no evidence that Progressive led Mr. Haroun to believe it had accepted the PEA. Mr. Haroun points to no evidence to support his assertion he "never received back fully executed copies of any of the other agreements he signed and delivered to [Progressive]." See Opp. Mot. Summ. J. 12, ECF No. 32.[7] Rather, the things Mr. Haroun counterclaims about—that Progressive has not paid him

---

[7] Mr. Haroun's references to the depositions of Progressive's CTO and CISO similarly do not support his argument that he was led by Progressive to believe it had accepted the PEA, these references merely show the deposed individuals did not know whether Progressive had signed.

the amounts set out in the PEA—tend to show the contrary, that Progressive was not acting as though it had accepted. In conclusion, even when Mr. Haroun's extrinsic evidence is considered, there is no ambiguity or dispute of fact that precludes summary judgment for Progressive.

### III. Mr. Haroun May Move for Leave to Amend, but the Court does not Grant him Leave to Amend at this Time.

Mr. Haroun requests he be granted leave to amend his claims if the court finds the PEA unenforceable. This request was improper because Mr. Haroun made the request in responding to Progressive's motion for summary judgment. DUCivR 7-1(a)(3). Mr. Haroun may move for leave to amend, see DUCivR 15-1, but at this time the court neither grants him leave to amend, nor will it assess the futility of amendment, see Castanon v. Cathey, 976 F.3d 1136, 1144 (10th Cir. 2020).

### ORDER

The court GRANTS Progressive's Motion for Summary Judgment on Mr. Haroun's counterclaims (ECF No. 31). Mr. Haroun may move for leave to amend under DUCivR 15-1.

DATED this 22nd day of March, 2023.

BY THE COURT

_Tena Campbell_
Judge Tena Campbell
United States District Court Judge